## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **KEVIN C. ROBINSON,**<br>        **Plaintiff**<br><br>v.<br><br>**TOWN OF MARSHFIELD, ROCCO LONGO, in his Official Capacity and Individually, and JOHN E. HALL, in his Official Capacity and Individually,**<br>        **Defendants** | **CIVIL ACTION NO.**<br><br><br>**PLAINTIFF'S COMPLAINT** |

## I.  NATURE OF CLAIM

Plaintiff, Kevin C. Robinson ("Robinson"), brings this action alleging:  age discrimination and retaliation in employment and failure to adequately investigate and remedy pursuant to M. G. L. c. 151B and 29 U.S.C. § 621, *et seq*. ("ADEA"), and common law claims.

## II.     ADMINISTRATIVE PROCEEDINGS

1.      Robinson filed a timely charge of discrimination based on age and retaliation with the Massachusetts Commission Against Discrimination and with the Equal Employment Opportunity Commission against the Defendants.

2.      Robinson received a Right to Sue Letter from the Equal Employment Opportunity Commission.

3.      Robinson otherwise has satisfied all administrative prerequisites to filing this action.

## III.    JURISDICTION

4.      With respect to Robinson's claims under the ADEA, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

5.     With respect to Robinson's claims under M. G. L. c. 151B and Robinson's common law claims, this court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.     Venue is proper pursuant to 28 U.S.C. § 1391 (b) as all Defendants reside in this judicial district.

## IV.   PARTIES

7.     Robinson is an adult individual residing in Marshfield, Plymouth County, Massachusetts.

8.     Robinson is 61 years of age.

9.     The Town of Marshfield (the "Town"), is a municipal corporation located in Plymouth County, Massachusetts.

10.     The Town is, and at all times relevant to this lawsuit was, an employer within the meaning of c. 151B and the ADEA.

11.     Robinson is, and at all times relevant to this lawsuit was, an employee of the Town within the meaning of c. 151B and the ADEA.

12.     As the Fire Chief for the Town, Robinson was a public figure.

13.     Rocco Longo ("Longo"), is an adult individual residing in Duxbury, Plymouth County, and, at all times relevant to this lawsuit, was Town Administrator and, as such, was part of the Town's management team.

14.     At all times relevant to this Complaint, Longo exercised and/or attempted to exercise authority over Robinson and initiated actions and/or had input into actions taken against Robinson.

2

15.     John E. Hall ("Hall"), is an adult individual residing in Marshfield and, at all times relevant to this lawsuit, was Chair of the Marshfield Board of Selectmen ("BOS") and, as such, had supervisory authority over Robinson.

16.     At all times relevant to this Complaint, Defendant Hall initiated actions and/or had input into actions taken against Robinson

17.     The Town of Marshfield acts by and through its Board of Selectman.  The BOS has three (3) members.  Matthew J. McDonough and Stephen G. Robbins were the other members of the BOS during all times relevant to this Complaint.

## V.     FACTS

18.     Robinson was initially hired by the Town in 1978 as a Call Firefighter.

19.     Robinson successfully worked his way up through the department ranks and was ultimately appointed Fire Chief in 2003.

20.     Robinson served as Fire Chief for approximately 12 years until the unlawful and retaliatory treatment to which he was subjected resulted in, *inter alia*, the loss of his employment.

21.     During his approximately 37 years of employment with the Town's Fire Department, Robinson served as:  Department Training Officer, Muscular Dystrophy Association ("MDA") Chair for Local 2568, a member and President of the Southeastern Massachusetts Executive Committee of the MDA, a member and President of the Fire Chiefs Association of Plymouth County; an Instructor, Coordinator, and Certification Examiner of the Massachusetts Firefighting Academy; a member and President of the Fire Chiefs Association of Massachusetts; and as a member and Chair of the state Board of Fire Prevention Regulations.

22.     During his 12 year tenure as Fire Chief, Robinson received numerous accolades regarding his performance and/or that of his Department, as well as consistently positive evaluations of his performance from the BOS.

23.     The most recent performance evaluation received by Robinson was for Fiscal Year 2012 and noted his leadership and management skills, referring to him as an "outstanding Fire Chief" who "actively participates at Department Head meetings, has been recognized by his peers as their President and has managed the Fire Operations expertly."

24.     Pursuant to his job description, his Contract of Employment, and M.G.L.c. 48, sec.42, as Fire Chief, Robinson had administrative control of the Town's Fire Department.

25.     Robinson's duties included, inter alia:  being in charge of all call firefighters; supervision and control of all training programs for department personnel and the assignment of personnel to such programs; maintaining the discipline of department personnel; issuing of orders, rules, regulations, policies and procedures; the assignment to shifts and duties of all departmental personnel; and being responsible for the planning, organizing, directing, staffing and coordinating of fire prevention, fire suppression, rescue and emergency medical operations.

26.     Numerous employees of the Fire Department have members of their immediate family working in the Fire Department.

27.     As defined by M.G.L. c. 268A, sec. 1(e), "immediate family" includes the employee and his spouse, and their parents, children, brothers and sisters.

28.     Pursuant to Massachusetts Conflict of Interest laws, municipal employees with supervisory authority over members of their "immediate family" are required to submit disclosures regarding said familial relationship.

4

29.     During Robinson's tenure with the Fire Department, both his brother and son were hired to serve on the Fire Department.

30.     Longo did not oppose the hiring and/or promotions of either of Robinson's male relatives.

31.     In or about November of 2013, Robinson's niece, Shauna Robinson ("FF. Robinson") was hired by the Town as a firefighter paramedic.

32.     Prior to her hire by the Town, FF. Robinson was already a state certified paramedic and had been working successfully without incident for a private ambulance service for approximately four and a half years.

33.     There were no complaints regarding FF. Robinson's performance from her direct supervisors at her private employer; the medical director under whom she worked with her private employer; the medical director under whom she worked with the Town; or from hospitals and/or patients regarding calls/treatment in which she participated.

34.     Longo was opposed to the hiring of FF. Robinson from the onset.

35.     FF. Robinson was treated differently than similarly situated male firefighters by being provided less training and support, and was subject to additional and heightened scrutiny with respect to her job performance.

36.     This heightened scrutiny included without limitation, sharing documents and information regarding her performance on calls that violated patient privacy as well as the Town's past and usual practice.

37.     Although FF. Robinson was not a member of Robinson's "immediate family" as defined by statute, in or about October of 2013 Robinson filed a "Disclosure of Appearance of

Conflict of Interest" regarding her potential employment with the Fire Department.

38.     Pursuant to said Disclosure, it was agreed that, inter alia, Robinson would remain the appointing authority but would recuse himself from the interview process for appointments or promotions regarding FF. Robinson.

39.     It was further agreed that if matters involving potential disciplinary action against FF. Robinson were brought to Robinson's attention that he would notify the Town Administrator who would in turn review the situation and make recommendations as to the appropriate action.

40.     Unlike the procedure concerning appointment and promotional opportunities wherein Robinson was to ratify recommendations made, there was no such ratification requirement regarding disciplinary recommendations, neither for FF. Robinson nor any other members of the Robinson family who are employed by the Fire Department.

41.     In or about early January of 2014, concerns regarding the training, treatment, and progress of FF. Robinson were brought to the attention of Robinson.

42.     Issues concerning allegations that FF. Robinson was "failing to make adequate progress" are not a "disciplinary" matter, nor have any such allegations regarding other firefighters been treated as such in the past.

43.     Issues concerning allegations that FF. Robinson was being treated differently than male firefighters with respect to the training provided and evaluation of their progress require Robinson, as the Appointing Authority, to take action in response.

44.     As was his duty and responsibility, and as he has done numerous times in the past regarding firefighters in his Department, Robinson looked into the issues concerning Firefighter Robinson's training, treatment, and progress.

6

45.     On or about January 20, 2014, Robinson met with Longo and Town Labor Counsel John Clifford ("Clifford") regarding matters involving, and the treatment of, FF. Robinson.  At the time of this meeting, Robinson had not taken any action to change FF. Robinson's status or training.

46.     During this meeting, Robinson indicated his willingness and intent to hold FF. Robinson to the same standards as other new firefighters and his willingness to terminate her, if appropriate.

47.     The Town via Longo and Clifford acknowledged that the current issue regarding FF. Robinson's probationary status was not specifically discussed in the Disclosure filed with and approved by the BOS in or about October of 2013.

48.     Clifford nonetheless suggested that the State Ethics Commission ("SEC") be notified.

49.     Based on Clifford's recommendation, the matter was referred to the SEC.

50.     As a result of the meeting, it was recommended, above and beyond what the law required, that Robinson recuse himself from involvement in decisions regarding the training and assessment of FF. Robinson, and that Longo would contact neighboring Fire Chiefs/Paramedics to assist and advise him in decisions regarding FF. Robinson's training, assessment and progress, and that Deputy Chief William Hocking would participate as a conduit for feedback and implementation of recommendations.

51.     It was agreed that should Longo and the designated Fire Chiefs/Paramedics determine, after appropriate monitoring, that FF. Robinson should be terminated for not meeting

appropriate standards during her probationary period, Robinson would follow that recommendation.

52.     Robinson complied fully with the terms of this agreement and had no further involvement in any decisions regarding the training and assessment of FF. Robinson after January 20, 2014.

53.     Two months later, on or about March 28, 2014, Longo issued a Memorandum to Robinson which he received on or about April 1, 2014.  In the Memorandum, Longo stated that he had engaged two (2) local Fire Chiefs to assist him in monitoring FF. Robinson's progress but neglected to mention that the monitoring was limited to reviewing the Preceptor Evaluation forms completed by the same individuals previously assigned to observe FF. Robinson and did not involve any examination into the legitimacy of the underlying evaluations or the adequacy of any alleged training provided to FF. Robinson.

54.     As admitted by Longo, both Fire Chiefs recommended that FF. Robinson "be assigned to another group as a means of further evaluating her paramedic skills, and to get a different perspective on her progress."

55.     Neither Fire Chief recommended FF. Robinson be terminated.

56.     Rather than follow the advice of the Fire Chiefs, and without ensuring that FF. Robinson was receiving the appropriate training, Longo engaged the services of a member of the Emergency Medical Testing Services ("EMTS") to perform an assessment of FF. Robinson's paramedic skills during patient care simulations.

57.     The EMTS assessment recommended remedial training for FF. Robinson but did not recommend her termination.

58.     There have been only two (2) occasions during Robinson's tenure as Chief wherein new members were assessed outside the Department - both of whom were female and both of which were conducted at the direction of Longo.

59.     Based upon the preceptor evaluations and the EMTS assessment, Longo, without the concurrence of the neighboring Fire Chiefs who were brought in specifically to offer objective advice and recommendations, and without providing customary remedial training in the areas of alleged deficiencies, recommended that FF. Robinson be terminated effective April 4, 2014, unless she agreed to withdraw as a probationary candidate.

60.     Deputy Chief William Hocking ("Hocking"), in his designated role regarding the assessment and training of FF. Robinson, and as a managing agent of the Town, took no action to investigate the treatment FF. Robinson was receiving or to ensure that she received the additional training she allegedly needed before concurring in the recommendation to terminate her employment.

61.     FF. Robinson's Captain and the Department Training Officer, Louis Cipullo, ("Cipullo") took no action to investigate or remedy the alleged disparate treatment being accorded FF. Robinson and in fact perpetuated the disparate treatment.

62.     Given that the termination recommendation was not a determination reached by Longo in consideration of the recommendations of the designated Fire Chiefs, the fact that no remedial training was provided as recommended via the EMTS assessment, and the underlying gender discrimination issues, Robinson voiced his disagreement with the termination directive.

63.     Robinson further advised Longo that he would be following the consensus recommendations of the outside evaluators as anticipated by the January 22, 2014 agreement, and

would provide the recommended remedial training outlined in the EMTS report, in line with past

practice and the treatment accorded new male members of the Fire Department.

64.     Robinson attempted to follow the EMTS recommended training plan and the

neighboring Fire Chiefs' recommendation to temporarily transfer FF. Robinson to another group

and to provide the recommended remedial training in the areas of her alleged deficiencies as has

been done with new male hires in the past.

65.     Robinson also began discussions regarding transferring FF. Robinson to another

group.  In addition to speaking to a Fire Chief in a nearby town, Robinson spoke with a captain in

the Fire Department who had been involved with a male firefighter who needed additional

training in the past.

66.     Robinson sent a memo to Longo dated April 7, 2014 and copied it to the BOS.

The memo again raised issues of disparate treatment with respect to the handling of FF.

Robinson's alleged performance deficiencies, the assessments of her performance, and the

training provided to her.

67.     On April 7, 2014, Robinson received a grievance filed by the Union pursuant to

its Collective Bargaining Agreement ("CBA") alleging serious, but unspecified, safety issues

created by FF. Robinson being scheduled to work in certain capacities because of an alleged need

for additional training.

68.     Pursuant to the CBA, Robinson had 12 working days to respond to the grievance.

If the Union was dissatisfied with Robinson's response, it is required to notify him that it is

taking the grievance to the next step, the BOS.

69.     There is nothing in the CBA that allowed the Union to file its grievance with the BOS without first addressing the matter with Robinson as provided therein.

70.     Notwithstanding the CBA's clear provisions, the Union brought the grievance to the BOS on or about Monday, April 14, 2014, only seven (7) days after it had been given to Robinson.

71.     Notwithstanding the CBA's clear provisions, the BOS voted to go into executive session to hear two (2) grievances that had been filed concerning Robinson's actions with respect to FF. Robinson even though Robinson had been bypassed on both grievances.

72.     While the Union had filed a grievance seeking to restrict FF. Robinson's assignments, it simultaneously filed a second grievance objecting to the fact that FF. Robinson was not being given overtime shifts as required by the CBA.

73.     While Robinson had insufficient time to prepare for the grievance hearing, and there had been no step one (1) process, Robinson raised a number of issues, including but not limited to, those concerning FF. Robinson's alleged need for additional training.

74.     Robinson noted that male firefighters who needed additional training had been provided that training in a manner that was not afforded to FF. Robinson.

75.     Robinson noted that the Union had not filed a grievance when a male firefighter was in a similar situation in 2012.

76.     Robinson pointed out the utter lack of specific information regarding the alleged safety issues, and the fact that there was no indication that any additional training FF. Robinson allegedly needed was actually given.

77.     During the April 14th Executive Session, Robinson yet again raised issues of disparate treatment with respect to the training provided to FF. Robinson, citing examples of male firefighters who were provided remedial training in areas of alleged deficiencies and provided deadlines for achieving set goals prior to taking any steps to terminate their employment.

78.     It was also during this Executive Session, and only 13 days following his receipt of Longo's March 28th Memorandum, that Robinson advised the BOS of FF. Robinson's decision to resign in response to Robinson having informed her of Longo's ultimatum that she withdraw as a probationary candidate or be terminated.

79.     FF. Robinson continues to be employed as a paramedic with her private employer, and has in fact been promoted to the position of field training officer.

80.     Robinson has a written employment contract with the Town.  The term of his most recent Contract was from July 1, 2010 to June 30, 2013.  Consistent with past practice, the terms of this Contract remained in full force and effect beyond the June 30th date, and continued to control the terms and conditions of Robinson's employment.

81.     Robinson fully performed his obligations and duties under this contract, and met the legitimate performance expectations of the Defendant Town.

82.     The Town, however, breached its contract with Robinson by, *inter alia*, failing to meet and discuss annual goals and objectives; failing to provide annual performance reviews; failing to comply with express provisions regarding the process to be used in the event of alleged performance issues or disciplinary problems; and the service of notices on Robinson.

83.     In or about May of 2014, Robinson began requesting meetings with the BOS regarding the negotiation of his employment contract for Fiscal Year 2014.  Rather than meet with him, and contrary to prior practice and procedure, Hall recommended that Robinson meet with Longo and Clifford.

84.     A meeting was held on June 17, 2014 concerning Robinson's Fiscal Year 2014 Contract.

85.     Robinson offered to accept the same package that the other Town Department Heads received for Fiscal Year ending June 30, 2014, i.e., a 2% salary increase.

86.     During the meeting, it was "suggested" that Robinson should retire in September because he will have 35 years of service and to protect his reputation from being damaged.

87.     However, it was the reckless and false statements being made by Clifford, Longo, Hall, and the BOS that were placing Robinson's reputation at risk.

88.     The statements, including without limitation, one inferring that Robinson had engaged in criminal misconduct and that the Town was considering filing criminal complaints against him, were made both in Public Notices and to the media in a deliberate and malicious effort to harm Robinson, and knowing them to be false and/or with reckless disregard for the truth of those statements.

89.     This "suggestion" that Robinson retire and "threat" regarding his reputation were repeated to him on two (2) other occasions - first in an August 2014 meeting with Longo and Clifford and again on or about December 26, 2014, as relayed by Michael Maresco ("Maresco"), upon information and belief, at the behest of the Town.

90.     Robinson had never discussed the issues he was having with the BOS and the Town with Maresco.

91.     The only other source of the information would have been Town officials.

92.     On or about June 30, 2014, the BOS, unbeknownst to Robinson met in Executive Session regarding his request for a salary increase and contract extension.  The BOS voted unanimously to deny both requests while there were issues pending before the SEC.

93.     In addition to filing ethics complaints against Robinson regarding his attempts to remedy the disparate treatment being accorded FF. Robinson, the Respondent Town also filed ethics complaints against:  Robinson's brother Captain Shaun Robinson for also raising concerns regarding the treatment being accorded FF. Robinson, and against Robinson regarding disciplinary actions and grievances pertaining to Captain Robinson.  These Complaints were filed despite the fact that Robinson's actions were in accordance with the:  Disclosures approved by the BOS; Robinson's legal and contractual job duties; and the treatment accorded other members of the Department.

94.     Despite threats regarding damage to his reputation, actions taken to carry out that threat, and the refusal to grant him a raise or enter into negotiations regarding his contract extension, Robinson did not retire in September of 2014.

95.     Approximately two months later, on or about November 24, 2014, the BOS voted unanimously to retain the law firm of Laredo and Smith ("L&S") as special counsel to "investigate" allegations of violations of the Conflict of Interest Law, despite the fact that either these same allegations were already pending before the SEC or that the BOS had already decided to refer them there.

96.     Robinson was served notice of the "investigation" by a constable in hand at the Fire Department notwithstanding a provision in his employment contract providing that all such notices be served via First Class Mail.

97.     Robinson was advised that he could have counsel at the interview with L&S. Robinson advised L&S that his attorney would not be available during the month of January 2015.

98.     Nevertheless, L&S scheduled Robinson's interview for January 21, 2015, when his attorney was unavailable.  Robinson advised L&S that his attorney would be available on and after February 1, 2015, but they insisted on conducting the interview in January.

99.     Robinson agreed to be interviewed without his counsel present if he were permitted to record the interview.  L&S refused to allow him to record the interview or to reschedule for a mere two (2) weeks.  Robinson was, therefore, never interviewed or permitted to provide any information on his behalf even though the L&S Report was not issued for another month.

100.    By letter dated January 1, 2015, Robinson had complained in writing to Hall regarding the discrimination to which he was being subjected.

101.    In response to Robinson's January 1st letter, the Town engaged the services of the law firm of Louison, Costello, Condon & Pfaff to "investigate" his complaints.

102.    In response to the assigned investigator's request for information, on or about January 14, 2015, Robinson submitted a detailed document outlining his complaints and identifying numerous witnesses, with respect to, inter alia, actions taken by the Defendants to interfere with the performance of Robinson's job duties; excluding Robinson from the

performance of his usual and customary job duties; the treatment of FF. Robinson; pressuring

him to retire; threatening his reputation; and initiating a duplicative "investigation" into alleged

conflict of interest violations.

103.     Robinson also submitted to an interview with the assigned investigator.

104.     On or about January 15, 2015, FF. Robinson filed a Charge of Discrimination

against the Town, notice of which was mailed to the Town on or about January 15, 2015.

105.     On or about January 19, 2015, Robinson received a Freedom of Information Act

request from FF. Robinson requesting all documents concerning her employment with

Respondent Town.  Robinson compiled all responsive documents in his possession, custody or

control and delivered them to Town Counsel Robert Galvin who proceeded to determine which

documents would be produced and which documents would be withheld.

106.     On or about February 10, 2015, Hall sent a letter to Robinson advising him of the

completion of the "investigation" into his complaints, but refused to provide him with a copy of

the Investigation Report or to advise him of the findings.  Clifford and Longo, two of the

individuals about whom Robinson had complained, were, however, provided with a copy of the

Report.

107.     On or about February 25, 2015, L&S issued a Memorandum regarding its Ethics

"investigation" which resulted in the recommendation that the Town refer the matter to the SEC

"for further proceedings or any other action deemed appropriate by the Commission."  L&S

never spoke to Robinson, nor requested any information from him before reaching its findings.

108.     Despite the fact that the report acknowledged that the relevant disclosure

agreements approved by the BOS did not require Robinson to accept the recommendations of the

Town Administrator regarding matters at issue in the ethics complaint and/or did not even

address the particular matters at issue in the ethics complaint, as well as the parameters of the

agreement reached on January 22, 2014 regarding FF. Robinson's probationary status, the

investigation nonetheless resulted in the "belief" that Robinson violated the State's Conflict of

Interest Laws.

109.    The BOS is required to meet at least two (2) times a month on Monday evening.

110.    The BOS scheduled a special Executive Session for Friday, February 27, 2015,

listing as the only item on the Agenda an Executive Session "[t]o investigate charges of criminal

misconduct or to consider the filing of criminal complaints, including but not limited to

violations of MGL 268A, (sic) the Conflict of Interest Law."

111.    Prior to the issuance of the Notice for the February 27, 2015 Executive Session,

the BOS was aware that rumors had been circulating the Town regarding alleged wrongdoing by

Robinson.

112.    During the Executive Session of the BOS on or about February 27, 2015, wherein

Longo and Clifford were also participants, a decision was made to place Robinson on

administrative leave.

113.    By letter from the BOS dated March 2, 2015, and only two months following his

written complaint of discrimination, Robinson was placed on paid administrative leave.

114.    That same day, Robinson received a telephone call from Longo directing him to

report to the Station.

115.    Upon Robinson's arrival at the Station he noted that the Captain of the Marshfield

Police Department was sitting in his vehicle in the Station parking lot.  Robinson proceeded to

his office and was met with Deputy Chief Hocking and a Special Investigator, and served in hand with a copy of the Notice of Placement On Administrative Leave.

116.    In violation of Robinson's employment contract providing that service be made by mail, notice of his being placed on leave was served on Robinson in hand at the Fire department by an employee by L&S.  The two men then requested that Robinson turn over his keys to the station, his keys to his department issued vehicle, and his radio.

117.    The two men then advised him to gather his personal belongings, and watched while he did so.  He was then escorted off the premises by both men in the presence of, inter alia, his administrative assistant, the fire alarm operator, the firefighters then on duty, and his son who was home from the military on leave and had happened to stop into the Station.

118.    Had it not been for his son's arrival, it was the Town's intent to have Deputy Hocking escort Robinson home as well.

119.    Robinson was advised that he was not permitted to enter any Town of Marshfield fire station without prior permission of Town Counsel.  The only other time during Robinson's tenure as Chief wherein such a directive was issued to an employee being placed on administrative leave was with respect to an employee accused of sexually harassing a co-worker.

120.    Robinson was further advised that he was not to engage in any official activities while on administrative leave.  Although Robinson had been scheduled to appear at a budget meeting that evening and a later town meeting, he was unable to even notify anyone of his inability to attend due to the fact that his cell phone and email access had been terminated prior to his arrival at the Station.

18

121.    According to the March 2nd Notice of Placement on Administrative Leave, Robinson was being placed on leave for approximately 60 days for the duration of an "investigation" by the BOS into his administration of the Marshfield Fire Department.

122.    Robinson was further advised that the "investigation" would be concluded shortly and that if further disciplinary action up to and including termination was found to be warranted, he would be notified as soon as possible.

123.    The very next day, and without proceeding with the "investigation" referenced in the March 2nd Notice or awaiting a decision from the SEC, Robinson was served with a Notice to Show Cause signed by Longo notifying him of his right to request a hearing to show cause as to why he should not be removed for good cause as the Fire Chief.

124.    Again, in violation of his employment contract, Robinson was served The Notice to Show Cause at his home by a Constable.

125.    On March 5, 2015, Hall was quoted on a local online news website as confirming that "[o]n Monday morning [March 2, 2015], we signed an order to tell [Robinson] he's on paid administrative leave" but Hall refused to comment further.

126.    The article was run the next morning in the Quincy *Patriot Ledger*.

127.    On March 7, 2015, the *Patriot Ledger* attributed to Hall a statement that it was in the February 27, 2105 Executive Session, which was publicly noticed as a session to investigate criminal misconduct, that the BOS voted to place Robinson on leave.

128.    Longo was also cited in the article as refusing to comment or provide any factual basis for the action.

129.     Thereafter, numerous articles appeared in local publications, both in print and online, repeatedly linking Robinson to the subject of the February 27, 2015 Executive Session of the BOS.  The allegations were also widely discussed on online forums.

130.     Despite their knowledge that Robinson had not engaged in any "criminal misconduct" and the fact that there was no basis for the Town to file any criminal charges against Robinson , Hall and Longo continued to refuse to provide to the press or the community at large any facts or basis for the actions taken against Robinson, thereby maliciously and/or recklessly allowing false rumors to continue to circulate about Robinson's alleged criminal misconduct.

131.     Although Robinson had no intentions of retiring prior to the mandatary retirement age of 65 and would suffer a significant loss of salary and benefits as well as a diminution of his retirement benefits, he had no choice but to retire given the Town's prior handling of matters concerning his employment; threats and actions taken to tarnish his reputation; potential total loss of his retirement benefits, vacation and sick pay; and the knowledge that he would not be treated fairly or lawfully by the Defendants in any hearing regarding the Town's decision to move to terminate his employment.

132.     On or about March 11, 2015, Robinson submitted notice of his intention to retire from the Town as of March 30, 2015.

133.     The Town appointed former Deputy Chief Hocking as Fire Chief.  Hocking was only able to accept the appointment because the Town changed the job description to account for the fact that he did not possess a college degree, as previously required for the position.

134.     Hocking is substantially younger than Robinson.

135.    Hocking, who had the authority to act with respect to the allegations of disparate treatment of FF. Robinson, failed and refused to take any steps to investigate or address the issues.

136.    The Town promoted Captain Cipullo to Acting Deputy Chief.

137.    Cipullo, who was a training officer, and otherwise had authority to address the issues with respect to FF. Robinson's training and progress, also failed and refused to take any steps to address the alleged issues with her training.

138.    During March 2015, numerous articles appeared in local publications, both in print and online, stating that Robinson was retiring and again repeatedly linking Robinson to the subject of the February 27, 2015 Executive Session of the BOS.

139.    The statements made by Hall and Longo that implicated Robinson in criminal misconduct in the performance of his duties as Fire Chief were made by Hall and Longo knowing that there was no basis for believing that Robinson had engaged in criminal misconduct and/or with a reckless disregard for the truth of the assertion.

140.    The statements were made in public notices and both print and online news publications that are widely read by members of the communities in which Robinson lives and works.

141.    The statements held Robinson up to scorn, hatred, ridicule and contempt in the minds of a considerable and respectable segment of those communities.

142.    As a result, Robinson suffered, *inter alia* damage to his reputation.

143.    Defendants discriminated against Robinson because of his age and by, *inter alia*: interfering with the exercise and performance of his mandated job duties; pressuring him to

21

retire; threatening to damage his reputation if he refused to do so; engaging in conduct to damage his reputation, including but not limited to initiating an internal investigation against him, lodging a complaint with the SEC, having him escorted from Fire Department property by a Special Investigator, and publicly accusing him of, *inter alia* criminal misconduct; failing or refusing to provide him with the 2% salary increase provided to other Town Department Heads; failing or refusing to negotiate the renewal of his Contract; causing the constructive termination of his employment; and failing or refusing to adequately investigate and remedy discrimination in violation of state and federal law, as well as the Town's own policies.

144.    Defendants retaliated against Robinson by, inter alia:  continuing and escalating its pattern of interfering with the exercise and performance of his mandated job duties; pressuring him to retire; threatening to damage his reputation if he refused to do so; engaging in conduct to damage his reputation, including but not limited to initiating an internal investigation against him, lodging a complaint with the SEC, having him escorted from Fire Department property by a Special Investigator, and publicly accusing him of inter alia criminal misconduct; failing or refusing to provide him with the 2% salary increase provided to other Town Department Heads; failing or refusing to negotiate the renewal of his Contract; causing the constructive termination of his employment; and failing or refusing to adequately investigate and remedy discrimination in violation of state and federal law, as well as the Town's own policies.

145.    Robinson suffered loss of income and benefits, emotional distress and damage to his reputation as a result of the Defendants actions and failures to act.

## COUNT 1: AGE DISCRIMINATION IN EMPLOYMENT
### All Defendants

146.    Robinson realleges and incorporates by reference the factual allegations contained in paragraphs 1 through 145 above.

147.    The actions and failures to act of the Defendants as set forth constitute discrimination in violation of M.G.L.c.151B and the Age Discrimination in Employment Act, 29 U.S.C. sec. 621 et seq.

148.    As a result of those actions and failures to act, Robinson has been damaged and continues to be damaged.

149.    The Defendants are liable to Robinson for the full amount of his damages.

## COUNT 2:  RETALIATION
### All Defendants

150.    Robinson realleges and incorporates by reference the factual allegations contained in paragraphs 1 through 149 above.

151.    Robinson engaged in protected activity by complaining internally of age discrimination against him and gender discrimination against FF. Robinson, and by taking action in an effort to ameliorate the discrimination to which FF. Robinson was being subjected.

152.     The actions and failures to act of the Defendants as set forth above constitute retaliation in violation of M.G.L.c.151B and the Age Discrimination in Employment Act, 29 U.S.C. sec. 621 et seq.

153.    As a result of those actions and failures to act, Robinson has been damaged and continues to be damaged.

154.    The Defendants are liable to Robinson for the full amount of his damages.

## COUNT 3: FAILURE TO INVESTIGATE AND REMEDY
### Town of Marshfield

155.    Robinson realleges and incorporates by reference the factual allegations contained in paragraphs 1 through 154 above.

156.    Robinson was subjected to discrimination and retaliation in violation of the Massachusetts Fair Employment Practices Act, M.G.L. C. 151B and the Age Discrimination in Employment Act, 29 U.S.C. sec. 621 et seq..

157.    Robinson complained internally of discrimination, both against him and against FF. Robinson.

158.    The Town knew or should've known of the discrimination to which Robinson and FF. Robinson were being subjected, and of Robinson's internal complaints.

159.    Pursuant to state and federal law, as well as the Town's own policies, the Town had a legal duty and obligation to adequately, promptly, and fairly investigate and remedy Robinson's complaints of discrimination.

160.    Respondent failed or refused to adequately, promptly, and fairly investigate and remedy Robinson's complaints of discrimination.

161.    Respondent's actions and failures to act violated M.G.L. c. 151B and the ADEA.

162.    As a result, Robinson, has been damaged and continues to be damaged.

163.    The Town is liable to Robinson for the full amount of his damages.

## COUNT 4-BREACH OF CONTRACT
### Town of Marshfield

164.    Robinson realleges and incorporates by reference the factual allegations contained in paragraphs 1 through 163 above.

24

165.    The actions and failures to act of the Town as set forth are in breach of Robinson's employment contract.

166.    As a result, Robinson has been damaged and continues to be damaged.

167.    The Town is liable to Robinson for the full amount of his damages.

## COUNT 5-DEFAMATION
### Hall and Longo

168.    Robinson realleges and incorporates by reference the factual allegations contained in paragraphs 1 through 167 above.

169.    Hall and Longo made statements about Robinson to the community at large and to numerous representatives of the press that they knew or should have known were false.

170.    Those statements held Robinson up to contempt, hatred, scorn or ridicule in the eyes of the communities in which Robinson lived and worked.

171.    As a result, Robinson has been damaged and continues to be damaged, including loss of income and benefits.

172.    Hall and Longo are liable to Robinson for the full amount of his damages.

## COUNT 6-INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### Hall and Longo

173.    Robinson realleges and incorporates by reference the factual allegations contained in paragraphs 1 through 172 above.

174.    Hall and Longo knew that Robinson had an employment contract with the Town.

175.    Hall and Longo engaged in deliberate acts intended to interfere with Robinson's contractual relations with the Town and which did interfere with Robinson's contractual relations with the Town.

176.    As a result, Robinson has been damaged and continues to be damaged.

177.    Hall and Longo are liable to Robinson for the full amount of his damages.

**WHEREFORE**, Plaintiff, Kevin C. Robinson, respectfully demands that this Court enter judgment in his favor and against the Defendants, for the full amount of his damages together with punitive and/or liquidated damages, interest, costs and reasonable attorney's fees, and grant such other and further relief as this Court deems just and appropriate.

**Plaintiff demands a trial by jury on all issues so triable.**

PLAINTIFF,
KEVIN C. ROBINSON
By his Attorneys,


/S/ Anne Glennon
_____
Anne Glennon, Esq. BBO# 658525
Law Office of Anne Glennon
P.O. Box 2004
Plymouth Massachusetts 02345
(617) 285-3670
Anneglennon.esq@gmail.com

/S/ Marisa A. Campagna
_____
Marisa A. Campagna, Esq. BBO# 552692
Law Office of Marisa A. Campagna
71 Commercial Street
Boston, Massachusetts 02109
(617) 338-1101
Marisa@maclawboston.com


Dated:  December 20, 2016