**United States District Court**
**District of Massachusetts**

```
_____
                              )
Kevin Robinson,               )
                              )
          Plaintiff,          )
                              )
     v.                       )
                              )   Civil Action No.
Town of Marshfield, et al.,   )   16-12560-NMG
                              )
          Defendants.         )
                              )
_____  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The case arises out of a dispute related to the resignation of Kevin Robinson ("Robinson" or "the Chief") as the Chief of the Fire Department in Marshfield, Massachusetts. Robinson alleges that he was constructively discharged as Fire Chief in retaliation for lodging internal complaints for age and gender discrimination against other officials in the Town of Marshfield.

The defendants respond that Robinson resigned because he was facing credible disciplinary action for violating state ethics rules. Following his resignation, Robinson filed a complaint in federal court alleging age discrimination, retaliation, failure to investigate claims of discrimination,

breach of contract, intentional interference with contractual relations and defamation.

I.  **Background**

Kevin Robinson served as the Marshfield Fire Chief for 12 years until he retired in March, 2015, when he was 60 years old. Although his employment contract with the Town of Marshfield ("the Town") expired in 2013, he continued as Chief of the Fire Department pending the renegotiation of his contract (as was common practice) until he retired in 2015.  The Town then hired Deputy Chief William Hocking, who is 54 years old, as the new Fire Chief following plaintiff's resignation.

A. **Involvement with Family Members**

The Town alleges that the Chief improperly interfered with the disputed employment of his family members by the Town, which ultimately led to his resignation.  In October, 2013, the Chief's niece, Shauna Robinson Patten ("Ms. Patten"), was selected for a full-time firefighter trainee position with the Marshfield Fire Department.  Before Ms. Patten began her employment, the Board of Selectmen ("the Board") met with the Chief and he submitted a conflict of interest disclosure form which stated that he would 1) recuse himself from any involvement in the interview or promotion process for which his brother, son or niece (all then employees of his department) became candidates, 2) not make any discretionary assignments

resulting in extra pay for his family members and 3) notify the Town of any potential disciplinary situation involving a family member.

During the first year of Ms. Patten's training, two of her supervisors expressed concerns about her ability to make decisions. Upon hearing about those concerns, the Chief asked that Ms. Patten be transferred to his group and, at one point, despite concerns from supervisors, he placed Ms. Patten on "shift strength" (meaning that she was able to take regular shifts). While defendants contend that Ms. Patten received special treatment during her training, Robinson submits that his niece was subject to gender discrimination by the defendants.

With respect to the Chief's brother, Shaun Robinson, a captain in the Marshfield Fire Department, defendants argue that the Chief conducted a disciplinary hearing without the presence of the Town Administrator or Town Counsel and later improperly reduced the disciplinary punishment meted out to his brother. The Chief responds that the Town Administrator, Rocco Longo ("Longo") gave him permission to reduce the punishment. Contemporaneously, the Town declined to renegotiate the Chief's contract, which had expired in 2013, and allegedly encouraged him to retire at least three times. The Town also reported the Chief's supervision of family employees to the State Ethics Commission ("the Commission").

**B. Placement on Administrative Leave**

In January, 2015, Chief Robinson filed a complaint with the Board alleging that he was a victim of age discrimination and harassment. The Board retained Attorney Regina Ryan who concluded in February that those complaints were meritless. That same month, Attorney Mark Smith, whose firm had been retained by the Town in November, 2014, to investigate allegations of conflict of interest, issued a report ("the Smith Report") which concluded that the Chief and his brother violated one or more sections of the Massachusetts conflict of interest laws. He recommended that the matter be referred to the Commission for further proceedings.

Following a February, 2015, meeting, the Board placed the Chief on paid administrative leave for 60 days. The next day, he was notified of his right to a public hearing to demonstrate why he should not be removed for cause. Nine days later, the Chief tendered his resignation as a result of which the Commission informed the Town that its investigation into the Chief's alleged misconduct would be terminated.

While defendants aver that they had good cause to terminate the Chief based upon his conflict of interest violations, he rejoins that from 2013 to 2015, the defendants retaliated against him because of his gender and age discrimination complaints. He further submits that, as part of the

retaliation, the defendants, among other things, interfered with his job performance, refused to renegotiate his employment contract, pressured him to retire, threatened to damage his reputation if he refused to retire, initiated an internal investigation against him, voted to terminate him and placed him on paid administrative leave.  The Chief filed his complaint in December, 2016, against the Town, the Town Administrator, Longo and the Chair of the Board, John Hall (collectively, "the defendants").  Pending before the Court is defendants' motion for summary judgment.

## II.  __Legal Analysis__

### A. Legal Standard

The role of summary judgment is to assess the proof in order to see whether there is a genuine need for trial. <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law". <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a

reasonable jury could return a verdict for the nonmoving party".
Id.

If the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the nonmoving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322–23.

**B. Motion for Summary Judgment**

**1. Age Discrimination (Count I)**

The plaintiff alleges age discrimination against the defendants under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("the ADEA") and M.G.L. c. 151B.

**a. Federal Claims under the ADEA**

Where there is no direct evidence of wrongful discharge under the ADEA, courts apply the McDonnell burden-shifting framework set forth by the Supreme Court. Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc., 804 F.3d 127, 129 (1st

Cir. 2015). Under that framework, the plaintiff must prove a prima facie case for age discrimination by showing that 1) he was at least 40 years old, 2) his work was sufficient to meet the employer's legitimate expectations, 3) the employer took adverse action against the plaintiff and 4) either younger persons were retained for the same position upon the plaintiff's termination or the employer did not treat age neutrally in taking the adverse action. Id. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for dismissing the employee. Id. If the employer does so, the plaintiff is required to show that the employer's proffered reason is a pretext and that age was the "but-for" cause of the adverse action. Id.

Defendants assert that because the Chief voluntarily resigned, he was not subject to an adverse employment action under the ADEA. They contend that the fact that he was facing potential disciplinary charges does not establish duress or coercion and that a plain reading of his resignation letter, which discloses his desire to spend more time with this family, is further evidence of no coercion. As to the individual defendants, Messrs. Longo and Hall, defendants aver that individual liability is not available under the ADEA and thus

those claims fail as a matter of law. The Chief does not contest that assertion.

The Chief assumes that he has met his burden of stating a prima facie case and asserts that defendants failed to articulate a legitimate reason for the Town's employment decision. He submits that defendants' "legitimate reason" for his "termination" is full of inconsistencies, that defendants have previously admitted that the Chief had filed the appropriate conflict disclosures and that the investigation by Attorney Smith was a "sham".

The plaintiff correctly points out that a resignation does not foreclose the possible finding of an adverse employment action. An "adverse action" under the McDonnell framework can include actual or constructive discharge. Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995). Thus, the plaintiff can state a prima facie age discrimination case by establishing that he was subject to constructive discharge, for instance that

> the new working conditions would have been so difficult or
> unpleasant that a reasonable person in the employee's shoes
> would have felt compelled to resign.

> Id. at 27.

The Court must evaluate the working conditions objectively, focusing on "the reasonable state of mind of the putative

discriminatee" while noting that the employee may not be "unreasonably sensitive to his or her working environment". Id.

The Chief alleges that he was faced with a take-it-or-leave-it choice: he could retire or be discharged.  In support of that claim, he points to a series of incidents in which the Town refused to renegotiate his contract, pressured him to retire, threatened to damage his reputation if he refused to retire, initiated an internal investigation against him and voted to place him on paid administrative leave.

This Court finds that such allegations do not rise to the level of constructive discharge.  Despite the Town's encouragement to retire and refusal to renegotiate his employment contract, the Chief continued his employment until he resigned in 2015.  Thus, unlike the employee in Herbert v. Mohawk Rubber Co., the Chief did not suffer a "forced choice" with respect to retirement. Cf. Herbert v. Mohawk Rubber Co., 872 F.2d 1104, 1113 (1st Cir. 1989) (holding that an early retirement offer is distinguished from a discharge when the employee has the choice to remain employed).

Moreover, courts have held that when an employee faces disciplinary charges and resigns, such circumstances do not affirmatively establish a coerced resignation. See Stone v. Univ. of Maryland Med. Sys. Corp., 855 F.2d 167, 174 (4th Cir. 1988).  Rather than challenge his potential "for cause"

dismissal at a hearing with counsel, the Chief resigned.  If he was convinced that the allegations of ethical misconduct were meritless, he should have exercised his rights at his for cause hearing.

Not only has the Chief failed to show that his resignation was coerced, he also has not rebutted defendants' claim that they had cause to remove him. Cf. Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 563 (1st Cir. 1986) (declining to find no constructive discharge as a matter of law because the employer had no legitimate reason for demoting the employee and yet made repeated inquiries about his resignation, promoted a younger person and threatened him with greater working hours if he did not resign).  Defendants have proffered specific facts that the Chief was placed on paid administrative leave because the Smith Report concluded that he committed multiple ethics violations in his role as Fire Chief.  In response to that evidence, the Chief alleges that the Smith Report was a "sham" investigation without reference to any specific evidence thereof, much less "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion". Del Valle-Santana, 804 F.3d at 131.  Accordingly, the Chief has not met his prima facie burden.

Even if this Court were to find that the plaintiff has alleged sufficient facts to show constructive termination (and

thus prove his prima facie case), he has not met his ultimate burden of showing age discrimination at the burden-shifting stage. At summary judgment, the Court must inquire into whether the evidence as a whole would permit a reasonable factfinder to conclude that the proffered reason was pretextual and the true reason was age-based animus. <u>Brennan</u> v. <u>GTE Gov't Sys. Corp.</u>, 150 F.3d 21, 26 (1st Cir. 1998). The plaintiff must

> elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.

> <u>Mesnick</u>, 950 F.2d at 824.

As noted previously, the defendants have offered a legitimate, nondiscriminatory reason for placing the Chief on administrative leave based on the fact that an independent investigation conducted by retained counsel concluded that he had violated several conflict of interest laws. Relying on his own testimony that the Town and its retained counsel had it out for the Chief does not rise to the level of "specific facts" to demonstrate that the employer's real motive was age discrimination. The Chief has not shown a genuine issue of material fact as to the reason for his alleged constructive termination, and as such, defendants' motion for summary judgment on the ADEA claims will be allowed.

### b. State Claims under M.G.L. c. 151B

The Massachusetts statutory requirements for plaintiff's prima facie age discrimination case are consistent with federal law insofar as defendant's requirement to show a legitimate, nondiscriminatory reason for "termination". <u>Brennan</u>, 150 F.3d at 26. Furthermore, Massachusetts courts have adopted the constructive discharge framework articulated by the First Circuit Court of Appeals. <u>GTE Prod. Corp.</u> v. <u>Stewart</u>, 421 Mass. 22, 34 (1995) (reiterating the standard articulated by the First Circuit for constructive discharge).

For the reasons set forth previously, this Court finds that the plaintiff has neither met his prima facie burden with respect to adverse action nor rebutted defendants' showing of suspension for good cause with respect to his corollary state law claims of age discrimination. Accordingly, defendants' motion for summary judgment with respect to the Chief's state law claims of age discrimination will be allowed.

### 2. Retaliation Claim (Count II)

The plaintiff alleges retaliation under federal and state law relating to his internal complaints of gender discrimination on behalf of his niece and age discrimination on behalf of himself. For both federal and state claims, the parties submit the following arguments.

The Chief contends that he pursued his discrimination claims in good faith and that there is a causal connection between the alleged retaliatory actions and his complaints in that they followed and/or escalated in close proximity to each other.  The Chief asserts that there are inconsistencies in the defendants' legitimate reasons for placing him on leave and that any adverse treatment that is likely to deter him from engaging in ADEA-protected activity is sufficient to support a claim of retaliation.

Defendants respond that the plaintiff has not established a prima facie case of retaliation because 1) no reasonable employee would have believed that Ms. Patten was a victim of gender discrimination or that he was a victim of age discrimination and 2) his subjective belief in the validity of such claims was not held in good faith.

### a. Federal Claims under the ADEA

To support a retaliation claim, the plaintiff must make a prima facie showing that he 1) engaged in ADEA-protected conduct, 2) was thereafter subjected to an adverse employment action and 3) demonstrated that a causal connection exists between the protected conduct and the adverse action. Mesnick, 950 F.2d at 827.

The fact that the Chief has not established an ADEA claim, as this Court has found, is not dispositive of his prima facie

case of retaliation. Id. It is enough that 1) the plaintiff had a reasonable, good-faith belief that a violation occurred, 2) he acted on it, 3) the employer knew of the plaintiff's conduct and 4) the employer reacted in consequence of plaintiff's action. Id. Because the defendants have not alleged any specific facts pointing to the Chief's bad faith in lodging his ADEA-related complaints, this Court assumes that he has satisfied the first prong of his prima facie retaliation case (engaging in ADEA-protected conduct). The plaintiff fails, however, to satisfy the second element because he resigned and was not constructively discharged. Thus, he was not subject to an adverse employment action.

Even assuming arguendo that the second element of the prima facie case is met, the Chief has failed to show a "causal connection" between the Town's decision to place him on paid administrative leave and his internal complaints. For example, Attorney Smith, who independently determined that the Chief violated several ethics rules, was retained before the plaintiff filed his age discrimination complaint against the Town. Moreover, there is no evidence that the Town doctored the Smith Report, as alleged, and the Town has articulated a legitimate reason for placing the Chief on administrative leave. Finally, the Chief cannot rely solely on the suggestion of close proximity between his age discrimination complaint and the

Town's ultimate decision to place him on leave as evidence of causal connection. See Trainor v. HEI Hosp., LLC, 699 F.3d 19, 27 (1st Cir. 2012) (finding that an employer "need not suspend previously planned [decisions] upon discovering that a [discrimination] suit has been filed").

Because the plaintiff has failed to show a prima facie case of retaliation under federal law, defendants' motion for summary judgment as to the federal retaliation claim will be allowed.

### a. State Claims under M.G.L. c. 151B

Under Massachusetts state law and in the absence of direct evidence of a retaliatory motive, the plaintiff must show that 1) he engaged in protected conduct, 2) he suffered some adverse action and 3) a causal connection exists between the protected conduct and the adverse action. Psy-Ed Corp. v. Klein, 459 Mass. 697, 706-07 (2011). Massachusetts courts have also held that a causal connection may be inferred where an adverse action is taken against a satisfactorily-performing employee immediately after the employer becomes aware of the employee's protected activity. The employer's intention to retaliate, however, must be shown to be a "determinative factor" in its decision to take adverse action against the employee. Id. at 707.

As explained previously, the same evidence proffered by the Chief with respect to alleged age discrimination does not support a finding of an adverse employment action in the

retaliation context.  As such, the Chief has not met his burden
of a prima facie showing of retaliation under state law.
Moreover, even if this Court inferred a retaliatory motive based
on the proximity in time between the complaints and the Town's
decision to suspend the Chief, he has failed to show that those
complaints were the "determinative factor" in the Town's
decision to place him on paid administrative leave.  To the
contrary, there was evidence that the Chief violated ethics
rules warranting his temporary suspension.  Accordingly,
defendants' motion for summary judgment on the state law
retaliation claim will be allowed.

### 3. Failure to Investigate Claims (Count III)

Robinson raises an independent claim of failure to
investigate under federal and state law.  Specifically, the
Chief contends that 1) the Town's investigation of his age
discrimination complaints by Attorney Ryan was inadequate and 2)
defendants' failure to take action with respect to his prior
complaints of age and gender discrimination was a breach of
defendants' duty to investigate.

The defendants rejoin that, under both federal and state
law, the duty to investigate claims of harassment or
discrimination does not give rise to an independent claim of
liability against the employer.  Assuming arguendo that a
separate claim for liability exists, defendants assert that the

Chief has failed to state a viable claim because, in the first place, the Chief does not have standing to bring such a claim on behalf of his niece, Ms. Patten.  As to the plaintiff's own age discrimination complaint, defendants respond that they did conduct an investigation.  Finally, defendants submit that the Chief's claim of failure to investigate is derivative from the discrimination claim and, because that claim is inoperative, his claim to investigate is lacking as well.

As to the Chief's federal claims, this Court is unaware of any affirmative duty to investigate, unless 1) he proves the underlying discrimination claim, 2) the claim arises in the Title VII context or 3) the Secretary of Labor brings an age discrimination suit on behalf of an employee. See Agusty-Reyes v. Dep't of Educ., 601 F.3d 45, 55 (1st Cir. 2010) (finding that an employer may avoid liability for alleged sexual harassment by a supervisor by showing that the employer acted with reasonable care and that the employee failed to take advantage of employer-sponsored resources to prevent harassing behavior established under Title VII); Marshall v. Sun Oil Co. (Delaware), 605 F.2d 1331, 1335 (5th Cir. 1979) (holding that "[t]he Secretary [of Labor] must of course investigate the allegations of terminated employees; otherwise conciliation would not be meaningful".).  As such, the Court declines to extend a stand-alone claim of

failure to investigate under federal law absent the Chief's showing of a prima facie case of underlying discrimination.

Under Massachusetts law, there is no obligation to investigate a claim of discrimination outside the context of an underlying discrimination action. See Lopez v. Commonwealth, 463 Mass. 696, 713 (2012) (claims for "aiding and abetting discrimination" and for "failure to investigate and remedy discrimination" are "entirely derivative of the discrimination claim[s]"); Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 395 n. 23 (2016) (finding that to the extent that judgment should not have entered on the discrimination claims, derivative claims fail as well); Keeler v. Putnam Fiduciary Tr. Co., 238 F.3d 5, 13 (1st Cir. 2001) (noting that nothing in the Massachusetts statute or the Massachusetts Supreme Judicial Court decision of College-Town, Div. of Interco., Inc. v. MCAD, 400 Mass. 156, 167-78 (1987) suggests that there is independent liability for failing to investigate colorable claims).

Accordingly, defendants' motion for summary judgment as to failure to investigate claims under federal and law will be allowed.

**4. Contractual Claims**

   **a. Breach of Contract (Count IV)**

To prevail on a breach of contract claim in Massachusetts, the plaintiff must show that 1) an agreement was made between the plaintiff and the defendant supported by valid consideration, 2) the plaintiff was ready, willing and able to perform, 3) the defendant failed to perform a material obligation under the agreement and 4) the plaintiff suffered damage as a result of defendant's failure to perform. Coady Corp. v. Toyota Motor Distributors, Inc., 346 F. Supp. 2d 225, 248 (D. Mass. 2003), aff'd, 361 F.3d 50 (1st Cir. 2004); see Singarella v. City of Boston, 342 Mass. 385, 387 (1961). A breach of contract is material when it involves "an essential and inducing feature of the contract". EventMonitor, Inc. v. Leness, 473 Mass. 540, 546 (2016).

The Chief avers that the defendants breached his employment contract by failing 1) to discuss annual goals and conduct performance reviews, 2) to comply with procedures for discipline, 3) to provide an annual cost-of-living salary increase and 4) to provide service of notices.

Defendants contend that no breach of contract occurred because the Chief resigned and the Town voted not to renew his contract based on his performance as Fire Chief.

Pursuant to the employment contract between the Town and the Chief ("the Contract"), the Town can suspend or remove him for cause, with or without payment, in accordance with Article 8 of the Marshfield Town Charter ("the Charter"). The Charter further provides that an appointed officer may be suspended or removed for good cause which includes incapacity, inefficiency, absenteeism, insubordination and conduct unbecoming the office.

Given that the Town had evidence that the Chief had violated Massachusetts ethics rules, it was within its authority to suspend him. Section 8-2-2 of the Charter provides that the temporary suspension may not exceed 30 days but in this instance the Town suspended the Chief for 60 days, contrary to the Contract. This Court finds that the suspension was not, however, an "essential" feature of the Contract, and thus not material, nor was it likely the "inducing feature" of the Contract. Even if the breach were material, the Chief has failed to demonstrate any harm because 1) the Town placed him on paid leave and gave him notice of his right to a hearing and 2) he resigned before the 60-day suspension expired.

As to the other allegations of breach of contract, the Court finds that failing to discuss performance reviews, provide a cost of living adjustment or afford service of notices (of which the Chief has provided no detail), are not material in that such provisions were not "essential" to the Contract, nor

did they likely induce the Chief to enter into the Contract.
Accordingly, summary judgment for the defendant as to
plaintiff's breach of contract claim will be allowed.

### b. Intentional Interference (Count VI)

In an action for intentional interference with contractual
relations, the plaintiff must prove that 1) he had a contract
with a third party, 2) defendant knowingly interfered with
contract, 3) defendant's interference, in addition to being
intentional, was improper in motive or means and 4) plaintiff
was harmed by defendant's actions. Harrison v. NetCentric Corp.,
433 Mass. 465, 476 (2001).  Improper motive or means requires
"actual malice" which is defined as any "spiteful, malignant
purpose, unrelated to the legitimate corporate interest". Weber
v. Cmty. Teamwork, Inc., 434 Mass. 761, 782 (2001).

The Chief has not met his burden of showing intentional
interference.  First, defendants' conduct does not rise to the
level of spiteful or malignant purpose because there was a
legitimate interest in temporarily removing the Chief during the
investigation of his alleged ethical misconduct.  Moreover, even
if this Court assumes arguendo that the Chief has met his prima
facie burden of showing improper motive through age
discrimination, the Chief has failed to show that such
discrimination was the controlling factor in the alleged
interference. Id. at 783 (finding that a judge may take into

account unlawful discrimination in determining whether actual malice exists but that the plaintiff must show it to be the "controlling factor" in the interference claim).

Because the plaintiff has proffered no evidence of defendants' alleged improper motive or that any purported discrimination was the controlling factor in the alleged contractual interference, defendants' motion for summary judgment as to intentional interference will be allowed.

### 5. Defamation Claims (Count V)

The defendants aver that, as a matter of law, neither Mr. Longo nor Mr. Hall made any defamatory statements regarding the plaintiff. In fact, they contend that failing to clarify the record and answering "no comment" with respect to press inquiries does not amount to defamation. They further dispute the Chief's claim that the news coverage about his facing criminal penalties for his misconduct was inaccurate.

Under any analysis of defamation (whether the Chief is considered a private figure or public official), the plaintiff must show actual malice to survive summary judgment. Here, he has made no such showing.

If considered a private figure, the Chief must show that the defendants were at fault for the publication of a false statement regarding him that was 1) capable of damaging his reputation in the community and 2) caused him economic loss or

imputed criminal misconduct to him. <u>White</u> v. <u>Blue Cross & Blue Shield of Massachusetts, Inc.</u>, 442 Mass. 64, 66 (2004). Alternatively, even if the statement is not false, he can prevail if he shows that a truthful yet defamatory statement was made with actual malice. <u>Id.</u> at 67.

Very few statements of any kind were made in this case because both Mr. Longo and Mr. Hall refused to comment on the Town's decision to place the Chief on paid administrative leave. The only "statement" at issue is the description of the Board's February, 2015, agenda relative to the Chief which was:

> To investigate charges of criminal misconduct or to consider the filing of criminal complaints, including but not limited to violations of MGL 268A, the Conflict of Interest Law.

The Court finds that the alleged defamatory statement is neither false nor does it rise to the level of imputation of criminal conduct. At the time of the public meeting, the Smith Report concluded that the Chief had violated ethics laws which carried potential criminal penalties and the Board met with the specific purpose of determining whether to investigate those charges or to file criminal complaints. It, instead, voted to place the Chief on paid administrative leave and to refer the matter to the Commission. Thus, the statement was not false, as the Chief contends, nor does it impute criminal misconduct to the plaintiff. At most, this cursory statement made clear that

the Board intended to investigate alleged charges against the
Chief.

Although this Court concludes that the statement was not
false, the plaintiff could have still prevailed if he had shown
that the statement was made with actual malice.  He did not.  He
failed to show that the agenda statement was made with knowledge
that it was false or made with reckless disregard as to its
falsity.  See New York Times Co. v. Sullivan, 376 U.S. 254, 279–
80 (1964) (defining actual malice as knowledge that such a
statement was false or made with reckless disregard of whether
it was false or not).  As noted previously, the Smith Report
concluded that the Chief violated ethics rules and that such
violations carried civil and criminal penalties.  While it would
have been prudent for the Board to omit the word "criminal" from
the item, there is no evidence that inclusion of the word was
either false or reckless.

Moreover, public officials, such as the defendants in this
case, are afforded conditional privilege with respect to public
statements that may be considered defamatory. Vigoda v. Barton,
348 Mass. 478, 485, (1965) (where a public official believes the
matter to be true and has not acted with actual malice or with
reckless indifference to the rights of the individual citizen,
his conditional privilege is not abused).  Once that conditional
privilege is invoked, the plaintiff can overcome it by showing

that defendants acted recklessly or with actual malice with respect to their defamatory statements. <u>Id.</u>  For the reasons set forth previously, the Chief has failed to show actual malice and thus a conditional privilege applies to defendants' statements (or lack thereof).

Finally, if the Chief is considered to be a public figure (someone with notoriety in the community), he must prove actual malice to recover damages for defamatory falsehood relating to his official conduct. <u>New York Times Co.</u>, 376 U.S. at 279-80 (holding that a public official cannot recover damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made actual malice).  Because the Chief has failed to show actual malice, his defamation claim as a public figure fails as a matter of law.

Accordingly, defendants' motion for summary judgment with respect to the defamation claim will be allowed.

## ORDER

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 49) is **ALLOWED.**


**So ordered.**

_/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated January 11, 2019