# United States Court of Appeals
## For the First Circuit

No. 19-1155

KEVIN C. ROBINSON,

Plaintiff-Appellant,

v.

TOWN OF MARSHFIELD; ROCCO LONGO, individually; MICHAEL A.
MARESCO, in his official capacity; and JOHN E. HALL, in his
official capacity and individually,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Anne Glennon, with whom Marisa Ann Campagna was on brief, for
appellant.
John J. Davis, with whom Jason W. Crotty and Pierce Davis &
Perritano LLP were on brief, for appellees.

February 14, 2020

Case 1:16-cv-12560-NMG   Document 73   Filed 02/14/20   Page 2 of 26

**BARRON**, **Circuit Judge**.  This appeal concerns a suit by Kevin C. Robinson that arises from the events that led to his retirement from his position as Fire Chief for the Fire Department ("Department") of the Town of Marshfield, Massachusetts ("the Town").  The District Court granted summary judgment against Robinson on each of his claims, which alleged violations of both federal and state law, and Robinson now appeals from that ruling. We affirm the grant of summary judgment on Robinson's federal-law claims, which he brings under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.[1]  With respect to the state-law claims, which the District Court had jurisdiction over pursuant to 28 U.S.C. § 1367, we affirm the District Court's grant of summary judgment against Robinson as to his claims for age discrimination, retaliation based on his 2015 complaint of age discrimination, and failure to investigate.  We vacate, however, the District Court's grant of summary judgment against Robinson as to his state-law claims for retaliation based on his 2014 complaint of gender discrimination, breach of contract, intentional interference with contractual relations, and defamation, and we direct the dismissal of these claims without prejudice.

---

[1] On appeal, Robinson challenges the grant of summary judgment against him as to these claims only insofar as they named the Town as the defendant.

## I.

Robinson retired from his position as Fire Chief in March of 2015 when he was sixty years old after having worked with the Department since 1978.[2]  He did so following a dispute with the Town that concerned, at least in part, the Town's allegations that Robinson had engaged in conduct that violated Massachusetts' conflict of interest laws while serving as Fire Chief, due to his interactions with various members of his family whom he had either worked with or managed at the Department.  See Mass. Gen. Laws ch. 268A, §§ 1-29.

In the course of the dispute of Robinson's failure to comply with those laws, the Town retained a law firm to investigate the matter.  The law firm's investigation led it to issue a report that concluded that the evidence could support a finding that Robinson had committed numerous violations of those laws.  The report recommended that the Town refer the matter to the Massachusetts State Ethics Commission.

Robinson announced his retirement in the wake of the issuance of the law firm's report.  He then filed a timely charge of "discrimination based on age and retaliation" with the Massachusetts Commission Against Discrimination and the United

---

[2] We recite the relevant facts in the light most favorable to Robinson, the nonmoving party.  See Santangelo v. N.Y. Life Ins. Co., 785 F.3d 65, 67 n.1 (1st Cir. 2015).

- 3 -

States Equal Employment Opportunity Commission ("EEOC") and received a Right to Sue Letter from the EEOC.

In December of 2016, Robinson filed a complaint in the United States District Court for the District of Massachusetts against the Town and other defendants that alleged various federal-law and state-law claims, including the ones that are before us on appeal. The defendants moved for summary judgment as to all of Robinson's claims, and the District Court granted that motion. Robinson now appeals from the judgment dismissing his claims.

## II.

"We review the District Court's grant of summary judgment de novo." Santangelo v. N.Y. Life Ins. Co., 785 F.3d 65, 68 (1st Cir. 2015). We may affirm a grant of summary judgment "on any ground revealed by the record." Id. (quoting Houlton Citizens' Coal v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999)).

Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party -- here, Robinson -- discloses "no genuine issue of material fact" and thus "demonstrates that 'the moving party is entitled to a judgment as a matter of law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). The nonmoving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Id.

### III.

We begin with Robinson's challenge to the District Court's grant of summary judgment to the Town as to the ADEA claim that he brings under 29 U.S.C. § 623(a)(1).  That provision makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1). Robinson alleges in this claim that the Town took actions against him based on his age that, by creating a hostile work environment, caused his constructive discharge, notwithstanding that he, at least formally, left the Department by retiring.

We follow the parties and the District Court in analyzing the District Court's grant of summary judgment to the Town on this claim pursuant to the burden-shifting framework that the Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Santangelo, 785 F.3d at 69-71 (assessing whether the plaintiff's ADEA claim for discrimination in employment survives summary judgment under the McDonnell Douglas framework).[3]  That

---

[3] Although the Supreme Court "has not definitively decided whether the evidentiary framework of [McDonnell Douglas] utilized in Title VII cases is appropriate in the ADEA context," Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 23 (1st Cir. 2015) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 n.2 (2009)), this Circuit "has long applied the McDonnell Douglas framework to ADEA cases," id. (quoting Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 n.2 (1st Cir. 2009)).

framework requires the plaintiff, to survive summary judgment, first to provide evidence sufficient to permit a reasonable juror to find that a prima facie case of age discrimination under the ADEA has been established.    See Del Valle-Santana v. Servicios Legales de P.R., Inc., 804 F.3d 127, 129-30 (1st Cir. 2015).    To meet that burden, the plaintiff must provide evidence from which a reasonable juror could find that:    (1) he was at least forty years old; (2) his work was sufficient to meet his employer's legitimate expectations; (3) his employer took adverse action against him; and, depending on the alleged adverse action, (4) the employer refilled the position, thus demonstrating a continuing need for the plaintiff's services and skill.    See id.; see also Vélez  v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 (1st Cir. 2009).

     In the event that the plaintiff provides evidence that would permit a reasonable juror to find that he has made out the requisite prima facie case, "[t]he burden of production then shifts to the employer 'to articulate a legitimate, non-discriminatory reason for its decisions.'"    Vélez, 585 F.3d at 447 (quoting Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008)).    If the employer meets that burden, then the plaintiff, to survive summary judgment, must provide evidence from which a reasonable juror could find that "the employer's proffered

reason is actually a pretext for discrimination." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991).

To satisfy this burden with respect to pretext, the plaintiff must "elucidate specific facts which would enable a jury to find that the reason given" by the defendant for the adverse employment action "is not only a sham, but a sham intended to cover up the employer's real motive:  age discrimination." Soto-Feliciano, 779 F.3d at 25 (quoting Mesnick, 950 F.2d at 824).  At this stage of the analysis, the "'focus must be on the perception of the decisionmaker,' that is, whether the employer believed its stated reason to be credible." Mesnick, 950 F.2d at 824 (quoting Gray v. New Eng. Tel. & Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986)).

We may assume that -- despite the District Court's contrary ruling -- the record would permit a reasonable juror to find that Robinson made out a prima facie case of age discrimination in employment, including that he demonstrated that there is a genuine issue of triable fact as to whether he was constructively discharged.  The reason we may do so is that, as we will explain, Robinson has failed to identify evidence in the record from which a reasonable juror could find that the Town's asserted legitimate, nondiscriminatory reason for acting toward him as it did was a pretext for age discrimination.

The Town asserts that it acted as it did in part due to its concerns about Robinson's performance as Fire Chief, which included concerns about his management style and morale issues within the Department.  Robinson refers in his recitation of the facts in his brief to us that he received a positive performance review in 2012 -- and thus years before his retirement -- from the Town Administrator, Rocco Longo.  He also refers in that portion of his brief to the fact that he had received no other reviews in the years since.  But, Robinson fails to develop an argument as to why the evidence in the record that supports those particular assertions regarding his past performance reviews -- or any other evidence in the record -- suffices to permit him to meet his burden at this stage of the litigation to show that the Town's asserted concerns about his performance as Fire Chief were pretextual. Instead, Robinson focuses his attention on the other reason that the Town asserted for having acted toward him as it did, which is that the Town was concerned that he had violated the state's conflict of interest laws while serving as Fire Chief.

We assume that Robinson's choice to focus only on that latter asserted reason by the Town does not doom his challenge to the grant of summary judgment, and, we note, the Town does not argue that it does.  But, even on that assumption, he still, to survive summary judgment, must satisfy his burden to show that the evidence creates a genuine issue of disputed fact as to pretext

with respect to the Town's asserted concerns about his violation of those conflict of interest laws.  And, we will explain, he has not done so.

In challenging as pretextual this asserted reason for the Town's actions toward him, Robinson argues that the record suffices to permit a reasonable juror to find that he had complied with the state's conflict of interest laws that the law firm's report addresses.  But, with respect to pretext, the question is "whether the employer believed its stated reason to be credible," id. (citing Gray, 792 F.2d at 256), not whether Robinson in fact violated the state's conflict of interest laws.  See Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-P.R., 404 F.3d 42, 45 (1st Cir. 2005) (explaining that the plaintiff must show that his termination was something more than an "unusual act" or a "business error," and that "'pretext' means deceit used to cover one's tracks").  Thus, this aspect of Robinson's challenge to the grant of summary judgment against him on this ADEA claim is not persuasive.

We move on, then, to consider Robinson's apparent contention -- though cursorily made -- that there is a genuine issue of triable fact as to pretext due to the way that the law firm conducted its investigation into his possible violation of the state's conflict of interest laws, on which its report finding evidence of such violations was based.  Robinson is right that an employer may be deemed to have acted pretextually if it relies for

its actions toward an employee on the conclusions of an investigation that the employer knows to have been a sham. See Vélez, 585 F.3d at 450 n.4 (analyzing record evidence to determine whether an investigation was a sham). But, we are not persuaded by Robinson's arguments (to the extent that he develops them) that the record, considered as a whole, provides a supportable basis from which a reasonable juror could find that the law firm's investigation lacked integrity, let alone that the Town knew that it did.

Robinson first focuses on the fact that the record supportably shows that the law firm that conducted the investigation did not interview him. The undisputed record shows, however, that the law firm did not interview Robinson due to a combination of factors that included the unavailability of Robinson's attorney for a month-long period during the investigation into his conduct and Robinson's departure from a scheduled interview after the law firm had declined to authorize him to record the interview. Thus, there is no basis in the record from which a reasonable juror could find that the law firm was not interested in obtaining Robinson's side of the story, let alone that the Town knew that it was not. See Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1119 (10th Cir. 2007).

Robinson also calls attention to the fact that the record shows that Town officials were involved in the law firm's

investigation.  The record reveals, in this regard, that, prior to reviewing a draft of the law firm's report, Town officials provided copies of Robinson's contract and the Town's Charter provisions referenced in the contract's section on termination for good cause to the law firm.  The record further reveals that, after reviewing a draft of the law firm's report, Town officials corrected a reference in that draft to who had served as Captain in the Department at a particular time, requested that the conclusions in the report be framed as opinions, and instructed that the report could include "may" or "appear" if the investigators were "not sure" about any conclusions.

But, we are aware of no authority that indicates that limited involvement by Town officials of that sort -- none of which even arguably took the form of directing the law firm to reach conclusions that its findings could not support -- would suffice to permit a reasonable juror to find that the investigation was rigged and that the Town knew it.  Nor does Robinson purport to identify any such precedent or point to any evidence in the record to show that such involvement by Town officials -- or any of their other actions related to the law firm's investigation -- violated any written or unwritten policies or regulations for conducting such an investigation.  See, e.g., Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000) (noting the relevance in the pretext analysis of evidence that the "defendant

acted contrary to an unwritten policy or contrary to company
practice when making the adverse employment decision").

We recognize that, as Robinson points out, the
undisputed record shows that the defendants offered to help the
law firm "wade through" documents in preparing its report. But,
the record does not provide support for a reasonable juror to find,
based on the evidence in the record of that offer or based on any
other evidence in the record, that the law firm's conclusions in
the report were based on records that the defendants cherry-picked.

Finally, Robinson asserts that the record shows that the
law firm did not ask questions about whether he favored one family
member who worked in the Department, his niece, even though the
law firm's report concluded that the evidence could support a
finding that he had used his position to secure unwarranted
privileges or exemptions for her that were not available to
similarly situated individuals. Robinson notes, too, that the
lawyer who oversaw the investigation for the law firm stated in
his deposition that he could not make a determination of favoritism
without knowing how the Fire Chief treated individuals outside of
his family.

But, even if a reasonable juror could find that the law
firm erred by not asking the right questions to support one of its
numerous findings that Robinson had committed conflict of interest
violations, Robinson points to no evidence that indicates that the

Town knew that the law firm may have erred in this way. Nor does he point to any evidence that the law firm lacked sufficient evidence to support the other findings in the report, which concluded that Robinson's involvement in employment matters related to his family in and of itself could have constituted a violation of the state's conflict of interest laws. Nor, finally, is it so clear that the conflict of interest laws permitted such involvement by him in personnel matters that a juror could reasonably find that the Town could not have relied on the report's findings in that regard other than as a pretext for discrimination.

Robinson does also suggest at one point in his brief that there is evidence from which a reasonable juror could find that the Town acted with age-based discriminatory animus in consequence of evidence in the record that could support a finding that Town officials had made repeated suggestions that he retire. The evidence reveals that two of those suggestions were made prior to the Town having retained the law firm to conduct the investigation into his potential violation of the conflict of interest laws and that the third suggestion was made while that investigation was ongoing and thus before the law firm issued the report with its findings.

There is no evidence in the record to suggest, however, that the law firm was aware that the suggestions for him to retire were made prior to the initiation of the investigation or issuance

of the report.  Thus, we do not see how the evidence that those suggestions were made to Robinson creates a genuine issue of material fact as to whether the Town's asserted concerns about his violation of the state's conflict of interest laws were merely a pretext for discrimination.  By Robinson's own account, the Town had not taken actions sufficient to result in his constructive discharge until after the law firm's report had issued.  There is, accordingly, no basis in the record for a juror reasonably to conclude that the Town responded as it did to the findings by the law firm -- which, as we have explained, Robinson fails to show were the product of a sham investigation -- out of age-based animus rather than, as the Town asserts, a concern about what they showed about Robinson's conduct in office.[4]

Thus, even considering the record as a whole, we do not see how it suffices to permit a reasonable juror to find that the investigation into Robinson's compliance with the state's conflict of interest laws was a sham or that the Town relied on a report by

---

[4] Robinson separately asserts, apparently pursuant to Massachusetts General Laws Chapter 151B, that he was impermissibly retaliated against by the defendants for having reported in 2014 -- and thus before the initiation of the law firm's investigation into his violation of the state's conflict of interest laws -- that his niece had been subjected to gender-based discrimination while an employee of the Department.  But, Robinson does not develop any argument that the fact that the law firm's investigation into his possible violation of those laws commenced thereafter itself calls into question the integrity of the investigation or of the report that the law firm issued based on that investigation.

that law firm that it knew to be a sham.  Accordingly, Robinson's
attempt to satisfy his burden with respect to pretext by casting
doubt on the integrity of the law firm's investigation and report
fails.

Robinson also tries to make the case for meeting his
burden as to pretext in another way.  He argues that the undisputed
record shows that the Town replaced him, following his retirement,
with a younger, less-qualified employee, who received higher pay,
and that the circumstances of his replacement show that the Town's
claimed reliance on his misconduct for the various adverse actions
that Robinson alleges that it took against him was a pretext for
age discrimination.

Robinson points out that the undisputed record shows
that he had a Bachelor of Science in Fire Administration; thirteen
years of experience at the Department, during which time he had
served as the Fire Chief, a fire officer, and an inspector; and
Emergency Medical Technician certifications.  By contrast, he
rightly asserts, the undisputed record shows that the person who
replaced him as the Fire Chief following his retirement was about
ten years younger, was licensed only as an Emergency Medical
Technician, did not have a fire officer or inspector license, and
became credentialed as a fire chief only once he had obtained the

position for the Town.[5]  In addition, Robinson asserts that the evidence, when viewed in the light most favorable to him, indicates that the Town changed the job qualifications for Fire Chief from having a master's degree when Robinson was hired to requiring only a high school diploma when his replacement was hired.

But, "[q]ualifications are notoriously hard to judge" and proving pretext through relative qualifications is an "uphill struggle" for the plaintiff.  Rathbun v. Autozone, Inc., 361 F.3d 62, 74 (1st Cir. 2004).  Thus, "in the absence of strong objective evidence (e.g., test scores), proof of competing qualifications will seldom, in and of itself, be sufficient to create a triable issue of pretext."  Id. (requiring a "stark" difference in qualifications, id. at 75).  Given that the record provides no basis for a reasonable juror to find that the law firm's report identifying his possible violations of the state's conflict of interest laws was a sham, we fail to see how the evidence in the record that would permit a reasonable juror to find that the person who replaced Robinson as Fire Chief had fewer qualifications for that post when he assumed the position than Robinson had at the time that he left it would also permit a reasonable juror to find

---

[5] Robinson also asserts in his Rule 56.1 motion and on appeal that his replacement's highest degree was a high school diploma, but he does not point to evidence in the record to support this contention.

that the Town's asserted legitimate, nondiscriminatory reason for its alleged constructive discharge of him was pretextual.

        We note, too, that even if Robinson were right that the record suffices to support a finding that the Town changed the qualifications after he retired to no longer require the Fire Chief to have a master's degree, the undisputed record shows that Robinson himself did not have such a degree when he was named the Fire Chief.  Thus, this aspect of the record cannot support Robinson's contention that the Town's alleged change in the qualifications supports an inference of pretext.

        Robinson's last ground for challenging the grant of summary judgment against him on this ADEA claim appears to be that the record shows that the Town had decided to terminate his employment by the time that he retired.  We may assume that the record would permit a reasonable juror to find that Robinson was constructively discharged and thus that he did not terminate his employment voluntarily when he retired.  But, the evidence in the record that would suffice to support that finding does not suffice to create a genuine issue of triable fact as to whether the Town's asserted reason for acting toward him as it did was a pretext for discriminating against him based on his age.  Thus, the evidence that Robinson highlights to show that the Town wanted to terminate him at the time that he retired -- evidence that includes earlier suggestions by Town officials that he retire -- fails to support

his challenge to this aspect of the grant of summary judgment
against him.  For this reason, too, therefore, his challenge to
the grant of summary judgment to the Town on this claim fails.

**IV.**

Robinson separately claims that, in violation of the
ADEA, the Town fired him in retaliation for his efforts to address
the age discrimination to which he contends that he was subject.
See 29 U.S.C. §§ 623(a),(d).  Like the District Court, we follow
the McDonnell Douglas framework in analyzing whether this claim
survives summary judgment, "albeit with slight modifications to
account for the retaliation claim's distinct focus."  Soto-
Feliciano, 779 F.3d at 30 (quoting Mesnick, 950 F.2d at 827).

Under that framework, the first stage requires the
plaintiff to "make a prima facie showing that (i) he engaged in
ADEA-protected conduct, (ii) he was thereafter subjected to an
adverse employment action, and (iii) a causal connection existed
between the protected conduct and the adverse action."  Id.
(quoting Mesnick, 950 F.2d at 827).  If the plaintiff makes this
prima facie showing, the burden shifts to the defendant to, as in
the discrimination context, "offer a legitimate, non-retaliatory
reason for the adverse employment action."  Id.  Finally, to rebut
this showing, "the plaintiff must assume the further burden of
showing that the proffered reason is a pretext calculated to mask
retaliation."  Id. at 30-31 (quoting Harrington v. Aggregate

Indus.-Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012)).  The
plaintiff then must show, in order to fend off a grant of summary
judgment against him, "more than that the defendants' asserted
reason for taking adverse action against him was not the real
reason.  He must show that the reason given was a cover for
retaliation." Id. at 32.

Robinson predicates this retaliation claim on the formal
complaint of age discrimination that he filed with the Town's Board
of Selectmen in January of 2015.  He alleges that, due to this
complaint, he suffered an array of retaliatory actions between
January and March of 2015, which together created the hostile work
environment that he alleges caused his constructive discharge.

Under the applicable burden-shifting framework, to get
past summary judgment on this claim, Robinson must show that there
is a genuine issue of disputed fact as to the causal connection
between his protected conduct and the Town's alleged retaliation.
To make that causal connection, Robinson relies on the fact that
the record shows that, after his filing of the January 2015
complaint, the Board met and voted to terminate him, he was placed
on paid leave, and he was called to a show cause hearing.

A very close temporal proximity between an employer's
knowledge of a protected activity and an adverse action can suffice
to support an inference of a causal connection in some
circumstances.  See, e.g., Calero-Cerezo v. U.S. Dep't of Justice,

355 F.3d 6, 25 (1st Cir. 2004); <u>Mesnick</u>, 950 F.2d at 828.  But, a reasonable juror could not, on this record, find based on timing alone that there was a causal connection between Robinson's January 2015 complaint and any adverse actions that followed.

As we have noted, the Town asserts that it acted as it did toward Robinson, in significant part, due to concerns about his compliance with the state's conflict of interest laws for which the law firm's investigation provided support.  The undisputed record shows, however, that the Town had hired the law firm to conduct its investigation into Robinson's compliance with those laws before he had filed his January 2015 complaint.  The undisputed record further shows that the law firm issued the report that concluded that the evidence sufficed to support a finding that Robinson had violated the conflict of interest laws immediately before the Town took the alleged adverse actions that ground his retaliation claim.  In addition, Robinson fails to point to any evidence that the law firm that conducted the investigation knew about his January 2015 complaint, either while it was conducting its investigation or while it was preparing the report.[6]

_____

[6] As we have noted, <u>see</u> <u>supra</u> text accompanying note 4, Robinson does also allege a claim of retaliation under Massachusetts General Laws Chapter 151B based on his 2014 report that his niece had been subjected to gender-based discrimination while working at the Department.  But, as we have also noted, Robinson does not contend that the law firm's investigation of his possible violation of the conflict of interest laws was a sham

Thus, given the intervening event of the report's issuance, we reject Robinson's attempt to meet his burden as to pretext based on timing alone.  See Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 1001-02 (10th Cir. 2011) (finding, in analyzing a 42 U.S.C. § 1981 retaliation claim under the McDonnell Douglas framework, that intervening events undermined the plaintiff's temporal proximity argument); see also Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (per curiam) (noting that an employer "need not suspend previously planned [actions] upon discovering that a [discrimination] suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality").[7]

---

because it followed his having made that report of gender-based discrimination.

   [7] Robinson also claims that the Town violated the ADEA by failing to investigate and remedy the discrimination against him. Robinson first raised arguments on appeal about his failure to investigate claim under the ADEA in his reply brief, after stating in his opening brief, "Plaintiff is not appealing the dismissal" of his failure to investigate claim.  Thus, he has waived his challenge to the District Court's ruling that there is no affirmative duty to investigate under the ADEA unless Robinson proves his discrimination claim or the Secretary of Labor brings the suit on behalf of the employee.  See Moffat v. U.S. Dep't of Justice, 716 F.3d 244, 255 (1st Cir. 2013) (citing N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 45 (1st Cir. 2001) ("There are few principles more securely settled in this court than the principle which holds that, absent exceptional circumstances, an appellant cannot raise an argument for the first time in a reply brief.")).

**v.**

We turn, then, to the District Court's grant of summary judgment to the defendants on Robinson's state-law claims.  As we mentioned at the outset, the District Court had jurisdiction over these claims solely pursuant to its supplemental jurisdiction.  See 28 U.S.C. § 1367.  That raises the question of whether we should address their merits or direct their dismissal without prejudice in the interests of comity.  See Wilber v. Curtis, 872 F.3d 15, 22-23 (1st Cir. 2017).  We review for abuse of discretion.  Id. at 23.

Notwithstanding that the federal-law claims have been dismissed, we may affirm the portions of a grant of summary judgment on remaining state-law claims "that are so plainly correct that no substantial question of state law is presented," id., as this course best serves "the interests of fairness, judicial economy, convenience, and comity," id. (quoting Desjardins v. Willard, 777 F.3d 43, 45-46 (1st Cir. 2015)).  Thus, we affirm the District Court's grant of summary judgment to the defendants on Robinson's state-law claim for age discrimination in employment under Massachusetts General Laws Chapter 151B  ("Chapter 151B"), given our conclusion with respect to Robinson's ADEA claim for age discrimination in employment that he has not provided evidence that would permit a reasonable juror to find that the defendants' legitimate, nondiscriminatory reason was pretextual.  See Bulwer

v. Mount Auburn Hosp., 46 N.E.3d 24, 32-33 (Mass. 2016).

Similarly, we affirm the District Court's grant of summary judgment

to the defendants on Robinson's state-law claim for retaliation

based on his attempt to redress the alleged age discrimination

under Chapter 151B, given our conclusion in connection with

Robinson's ADEA claim for retaliation that timing alone does not

support a finding of a causal connection between his January 2015

complaint for age discrimination and the actions taken against him

that he contends resulted in his constructive discharge. See Psy-

Ed Corp. v. Klein, 947 N.E.2d 520, 530 (Mass. 2011) (citing federal

case law that analyzes retaliation claims brought under the ADEA

and explaining that a causal connection may be inferred based on

temporal proximity, but that the plaintiff must still show that

"the employer's desire to retaliate against the employee" was "a

determinative factor in its decision to take adverse action"); see

also Mole v. Univ. of Mass., 814 N.E.2d 329, 341 (Mass. 2004). We

affirm, too, the District Court's grant of summary judgment to the

Town on his state-law claim under Chapter 151B for failure to

investigate, as the same reasons that lead us conclude that

Robinson has waived any challenge to the District Court's grant of

summary judgment to the Town on his federal-law claim under the

ADEA for failure to investigate lead us to conclude that he has

waived any challenge to the grant of summary judgment on the state-law variant of it that he brings.

That still leaves for us to address the District Court's grant of summary judgment against Robinson as to the various state common-law claims that he brings, which are for breach of contract, intentional interference with contractual relations, and defamation, as well as his Chapter 151B claim for retaliation based on his reporting of gender discrimination. Robinson challenges those portions of the summary judgment ruling on various grounds that the defendants vigorously contest. But, because "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966), we follow a different course with respect to these claims than we have taken with respect to the other state-law claims that are before us.

There is no analogue to any of these three state common-law claims in the federal-law claims that we have addressed. Nor does our analysis of Robinson's ADEA retaliation claim, which is predicated on protected conduct by him that occurred in January of 2015 (and thus once the law firm's investigation into his potential violation of the state's conflict of interest laws was already underway) necessarily bear on the issues presented by his Chapter 151B claim of retaliation based on his reporting of gender

discrimination in January of 2014 (which preceded the law firm's investigation). Thus, rather than attempt to resolve the state-law issues that are in dispute between the parties as to these claims, we direct their dismissal without prejudice.

## VI.

We **affirm** the District Court's grant of summary judgment on Robinson's federal-law claims under the ADEA, and on the state-law claims for discrimination, retaliation based on the 2015 complaint of age discrimination, and failure to investigate.[8] We

---

[8] We note that, after Robinson filed this appeal, one of the defendants named in some of the state-law claims that he brings -- Rocco Longo -- passed away. Because Robinson brings each of the state-law claims before us against at least one defendant other than Longo, his appeal of the grant of summary judgment on these claims is not moot. Moreover, pursuant to Federal Rule of Appellate Procedure 43, this Court granted Robinson's motion to substitute Michael A. Maresco, the Town Administrator, as a defendant in place of Longo for all claims asserted against Longo in his official capacity.

Robinson also moved to substitute Longo's estate as the defendant in place of Longo for all claims asserted against Longo in his personal capacity, and, in response, we ordered the defendants to file a status report advising the Court of their efforts to find a personal representative of Longo who could be substituted as a party on appeal under Federal Rule of Appellate Procedure 43(a). The defendants filed a status report in which they explained that no one had been appointed as the personal representative of Longo's estate, and, as of the time of this opinion's publication, neither party has identified a personal representative to be substituted for Longo as the defendant for any claims that Robinson brings against Longo in his personal capacity. The defendants now argue to us that, to the extent a defamation claim was brought against Longo in his personal capacity, it does not survive his death. Robinson does not address this contention in his briefing to us, and we thus treat as moot Robinson's appeal of the grant of summary judgment of that state-

**vacate** the District Court's grant of summary judgment on the state-
law claims for retaliation based on Robinson's 2014 report of
gender discrimination, breach of contract, intentional
interference with contractual relations, and defamation, and we
direct the dismissal of these claims without prejudice.  No costs
are awarded.

---

law claim, to the extent that Robinson brings it against Longo in
his personal capacity, just as we treat as moot Robinson's appeal
of the grant of summary judgment of any other of Robinson's state-
law claims that are before us on appeal to the extent that they,
too, are brought against Longo in his personal capacity.